UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **AOT HOLDING AG, individually and on behalf of all others similarly situated,**   Plaintiff,   v.   **ARCHER DANIELS MIDLAND CO.,**   Defendant. | )  )  )  )  )  )  )  )  )  )  )   Case No. 19-CV-2240 |

## ORDER

Plaintiff, AOT Holding AG, on behalf of all other similarly situated, filed a Class Action Complaint (#1) against Defendant Archer Daniels Midland Company ("ADM") on September 4, 2019, alleging ADM manipulated the benchmark price of ethanol downward in violation of the Commodity Exchange Act (7 U.S.C. §1, et seq.) ("CEA"). ADM filed a Motion to Dismiss (#14) on November 4, 2019, to which Plaintiff filed a Memorandum in Opposition (#20) on November 18, 2019, to which ADM filed a Reply (#22) on November 26, 2019. Plaintiff then filed a Motion to File a Response to ADM's New Argument (#23) on December 2, 2019, which the court granted and allowed to be filed on April 23, 2020. For the following reasons, ADM's Motion to Dismiss (#14) is GRANTED in part and DENIED in part.

*Summary of Complaint*

This is a putative class action case involving alleged manipulation of the market price of ethanol by ADM. Plaintiff alleges that the manipulation occurred at the Argo, Illinois, fuel terminal, the scene of daily trading for ethanol. The specific trading in question occurred during the half hour "Market-on-Close" (MOC) window, a 30-minute trading period for ethanol transactions between 1 and 1:30 pm every trading day at the Argo Terminal. This trading window is crucial, because S&P Global Platts ("Platts"), a provider of trading information in the ethanol market and other markets, creates the daily Chicago Benchmark Price that determines the value of Chicago Ethanol Derivatives. Platts uses the trading during the MOC to determine the daily Chicago Benchmark Price. The benchmark price is used to price and settle numerous ethanol derivatives on the New York Mercantile Exchange ("NYMEX") and the Chicago Board of Trade ("CBOT"), commodity exchanges operated by CME Group, Inc.

Plaintiff AOT Holding AG alleges that, starting in November 2017 and continuing through the filing of the instant suit in 2019, ADM flooded Argo terminal with ethanol that it intentionally sold at artificially low prices in order to juice the profits on its outsized short positions in related ethanol derivatives. Plaintiff alleges that ADM "dramatically" shifted from buying to selling ethanol at Argo at the start and for the duration of the alleged manipulation period; continued to produce and sell at Argo even as prices fell and profits evaporated; sold at Argo for less than it could have

received elsewhere; sold at prices below its variable cost of production; and priced ethanol so aggressively during the MOC window that it captured 90% of all sales influencing the Chicago Benchmark Price, despite having only 10% share of the US ethanol market.

At the same time, ADM orchestrated a scheme wherein it took massive "short" positions in ethanol derivatives, betting that the price of ethanol would decline further. To make sure that these derivative speculations would be extremely profitable, Plaintiff alleges that ADM intentionally manipulated the price of ethanol downward through its actions at the Argo Terminal.

Plaintiff has sued ADM alleging that its "manipulative conduct and trading activity alleged herein constituted manipulation of the Chicago Ethanol Terminal price used to settle/price the aforementioned Chicago Ethanol Derivatives between November 2017 and the present, in violation of the Commodity Exchange Act, 7 U.S.C. §§ 6b(a), 6c(a), 9(1), 9(3), 13(a)(2), and 25(a), as well as 17 C.F.R. § 180.2."

*Dismissal Under Rule 12(b)(6)*

ADM raises two main arguments in its Motion to Dismiss: (1) Plaintiff cannot state a claim for illegal manipulation under the CEA because it failed to plead facts plausibly showing that ADM illegally manipulated the ethanol benchmark price, and, instead, the conduct alleged is more consistent with routine market conduct in line with a wide swath of rational and competitive business strategies; and (2) Plaintiff failed to plead facts that plausibly show an injury.

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true the well-pleaded facts in the complaint and draws from those allegations all reasonable inferences in the plaintiff's favor. *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 499 (7th Cir. 2017). To survive a motion under Rule 12(b)(6), the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Park Pet Shop*, 872 F.3d at 499, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" as alleged in the complaint. *Park Pet Shop*, 872 F.3d at 499, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court finds that, at this stage of the proceedings, taking all the allegations in Plaintiff's Complaint (#1) as true, reading the allegations in the light most favorable to Plaintiff, and drawing all inferences in its favor, Plaintiff has stated a claim that is plausible on its face and upon which relief could be granted. See *Twombly*, 550 U.S. at 570. The court further finds that Plaintiff's Complaint describes the claim in sufficient detail to give ADM fair notice of what the claim is and the grounds upon which it rests. See *Lugg v. Sutton*, 368 F.Supp.3d 1257, 1260 (C.D. Ill. 2019), citing *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The court makes no determination on the merits of ADM's arguments, and all of ADM's arguments may be reraised at a later stage in the proceedings where the record can be more fully developed "and when the applicable procedural rules permit a more fulsome and searching analysis." See *Access 4 All, Inc. v. Chicago Grande, Inc.*, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007).

*Individual Statutory Causes of Action*

Defendant argues that, even the case is not dismissed in its entirety under 12(b)(6), the Complaint's sole count should be dismissed to the extent it is based on asserted violations of 7 U.S.C. §§ 6b(a) and 6c(a).

<u>7 U.S.C. §§ 6b(a)</u>

Section 6b(a) of the CEA, generally, prohibits fraud in commodity futures contracts, and to establish a violation of the CEA's anti-fraud provisions, a plaintiff must prove: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality. *Commodity Futures Trading Commission v. International Financial Services (New York), Inc.*, 323 F.Supp.2d 482, 499 (S.D.N.Y. 2004), citing *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 104, 115 (11th Cir. 2002). Such facts must be pled with "particularity." *DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 265 F.Supp.2d 254, 263 (S.D.N.Y. 2003); *Commodity Futures Trading Commission v. American Metals Exchange Corp.*, 693 F.Supp. 168, 190 (D.N.J. 1988) (fraud based complaints under the CEA must be pled with sufficiently particularity to comply with Federal Rule of Civil Procedure 9(b)). A plaintiff must additionally show that the fraud was: (1) in connection with an order to make or the making of a contract of sale of a commodity for future delivery, and (2) made for or on behalf of another person. *Commodity Trading Futures Commission v. Driver*, 877 F.Supp.2d 968, 977 (C.D. Cal. 2012).

Plaintiff does not dispute, or even respond to, ADM's argument that it has not specifically pled that ADM made a misrepresentation in connection with any order to make or the making of any contract of sale of any commodity, or that ADM even made

5

any misrepresentation at all. Therefore, the court finds Plaintiff has conceded this point. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver," and results in a silence from which the court can infer concession of an argument); *Cintora v. Downey*, 2010 WL 786014, at *4 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession.").

Plaintiff argues in response that nothing in the Federal Rules of Civil Procedure requires it to draft a complaint specifying a single statute as the basis for the claim, and, accordingly, if the court finds Plaintiff has stated a plausible claim of manipulation under the CEA, the court can defer to a later stage any inquiry into how Plaintiff's alleged facts fit into the various legal theories codified under the CEA. See *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

Plaintiff has not pled allegations consistent with a fraud claim under § 6b(a), and therefore the court dismisses the Complaint to the extent it is premised on that section of the CEA. However, if Plaintiff discovers the necessary elements of a § 6b(a) claim during discovery, amending the Complaint to add a new claim under that section may be permissible. See *Barren v. Northeast Regional Illinois Commuter Railroad Corp.*, 2015 WL 764105, at *2 (N.D. Ill. Feb. 23, 2015), citing *Bower v. Jones*, 978 F.2d 1004, 1010 (7th Cir. 1992). Plaintiff is reminded that, in order to add such a claim to its Complaint during discovery, it must not currently be aware of facts supporting a § 6b(a) claim. See *Barren*, 2015 WL 764105, at *2, citing *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012). If it is aware of such facts, it should file an amended complaint within 21 days of this Order

stating a § 6b(a) claim with particularity. Further, if Plaintiff learns during discovery that it has a § 6b(a) claim, it should not wait until the last weeks and days of discovery to move to amend its Complaint, but should move immediately upon realization of the claim to add it. See *Barren*, 2015 WL 764105, at *2, citing *Tribble*, 670 F.3d at 761, and *Hukic v. Aurora Loan Services*, 588 F.3d 420, 432 (7th Cir. 2009). Plaintiff's claim, to the extent it is based on § 6b(a), is dismissed without prejudice.

    7 U.S.C. §§ 6c(a)

ADM argues that any claim premised on § 6c(a) of the CEA must be dismissed because that section does not provide for a private cause of action. ADM is correct.

Section 4c(a)(1)-(2) of the CEA makes it unlawful to enter into, offer to enter into, or confirm the execution of certain transactions, including a "fictitious sale" and any transaction "used to cause any price to be reported, registered, or recorded that is not a true and bona fide price[,]" and is codified as amended at 7 U.S.C. § 6c(a). *Commodity Futures Trading Commission v. TFS-ICAP, LLC*, — F.Supp.3d —, 2020 WL 70940, at *2 (S.D.N.Y. Jan. 7, 2020). Section 4c, codified at 7 U.S.C. § 6c(a), "cannot sustain a private cause of action." *Ploss v. Kraft Foods Group, Inc.*, 197 F.Supp.3d 1037, 1067 (N.D. Ill. 2016); *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 676-79 (N.D. Ga. 1983). Therefore, ADM's motion is GRANTED on this ground. To the extent Plaintiff's claim is premised on § 6c(a) of the CEA, it is dismissed with prejudice.

*Punitive Damages*

The parties dispute whether Plaintiff can recover punitive damages in this matter.  Initially, the CEA did not allow plaintiffs invoking the Act's private right of action to recover punitive damages.  See *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 669 F.Supp. 1244, 1265-66 (S.D.N.Y. 1987) .  The CEA was later amended, however, to allow for punitive damages in certain circumstances.

ADM argues that under § 25(a)(3), the authorization for both actual and punitive damages is directed at "floor brokers" who violate the CEA when executing "an order on the floor of a registered entity[.]"  See 7 U.S.C. § 25(a)(3).  ADM notes that Plaintiff does not allege that ADM is a floor broker under the CEA.  ADM further points to the CEA's legislative history to argue that punitive damages were only meant to be available against floor brokers.

Plaintiff responds that its action arises from ADM's execution of orders for ethanol futures on the floor of a registered entity, NYMEX.  Plaintiff further argues that awarding punitive damages against a manipulator of exchange-traded derivatives would effectuate the CEA's stated purpose to deter and prevent price manipulation and the purpose of the punitive damages amendment to strengthen the regulatory framework to deter and detect fraud and abuse that may be perpetuated on the floors of futures markets.  Plaintiff argues that statutory interpretation of § 25(a)(3), and the legislative history, support its claim of punitive damages against ADM.

The parties are in agreement that there is a near total absence of case law about the availability of punitive damages in circumstances analogous to those of the instant case.  The parties cite two cases that mention the punitive damages provision of the CEA.

In *Gunderson v. ADM Investor Services, Inc.*, 2001 WL 624834 (N.D. Iowa, Feb. 13, 2001), the plaintiffs, a group of grain producers, sued defendants, commodity trading advisors, grain elevators, introducing brokers, and futures commissions merchants, to recover for fraud in promoting hedge-to-arrive ("HTA") contracts.  The court dismissed the claim for punitive damages under the CEA, finding that the plaintiffs "have not asserted that ADM [Investor Services, Inc.] willfully and intentionally committed violations of the CEA arising from the execution of an order on the floor of a contract market[.]" *Gunderson*, 2001 WL 624834, at *13.  A punitive damages claim was dismissed for the same reason in an earlier ruling in that case.  *Gunderson v. ADM Investor Services*, 85 F.Supp.2d 892, 913 (N.D. Iowa 2000).

In *Eby v. Producers Co-op, Inc.*, 959 F.Supp. 428 (W.D. Mich. 1997), like in *Gunderson*, the plaintiffs, farmers, alleged the defendant grain elevator operators marketed hedge-to-arrive contracts that were fraudulent and in violation of the CEA in that the defendants "misrepresented the risk, failed to provide risk disclosure, failed to segregate funds, failed to provide confirmation and monthly statements and failed to supervise handling of Plaintiffs' accounts." *Eby*, 959 F.Supp. at 429.  The court noted that "[t]he gist of the Plaintiffs' CEA claim is that the Defendant's HTA is a disguised commodity futures contract which was executed outside of a proper contract market in

violation of a number of provisions of the CEA[,]" and "[t]herefore the key determination is whether the contracts are off-exchange futures contracts which are prohibited under the CEA, 7 U.S.C. § 2(I), or a contract which falls under the cash forward contract exclusion expressly exempting it from the reach of the CEA." *Eby*, 959 F.Supp. at 433.  The court dismissed the punitive damages request because, as in *Gunderson*, "[t]he Plaintiffs have not alleged that the Defendants willfully and intentionally committed violations of the CEA on the floor of a contract market." *Eby*, 959 F.Supp. at 433.

ADM's only argument, in relation to the case law, is that the punitive damages claim should be dismissed "[f]or the same reasons" as the dismissals in *Gunderson* and *Eby*.  Plaintiff responds that punitive damages were denied in *Gunderson* because those cases involved "off-exchange" instruments that were *not* traded on a "registered entity" such as NYMEX.  The court agrees with Plaintiff that *Gunderson* and *Eby* are distinguishable from the instant case in that regard.  The price manipulations at issue in this case involve ethanol derivatives traded on a registered entity.

Paragraphs 1 through 6 of the Complaint contain a summary of Plaintiff's allegations in this case.  Plaintiff alleges ADM manipulated the Chicago Ethanol (Terminal) price, a key ethanol benchmark price that is used to price and settle numerous ethanol derivatives traded on NYMEX.  NYMEX is a registered entity under the CEA.  See 7 U.S.C. § 1a(40) ("The term "registered entity" means– (A) a board of

trade designated as a contract market under section 7 of this title[.]");

https://www.cmegroup.com/company/nymex.html (Last visited May 6, 2020); *U.S. Commodity Futures Trading Commission v. Oystacher*, 2016 WL 3693429, at *19 (N.D. Ill. July 12, 2016) ("The NYMEX and COMEX are commodity futures exchanges owned and operated by the CME*.").*

Plaintiff alleges ADM orchestrated a plan to drive the Platts benchmark ethanol price downward. While the downward manipulation occurred at the physical location of the Argo Terminal, this manipulation in turn artificially increased the value of ADM's massive short positions in ethanol derivatives based on those same prices. Essentially, the prices the ethanol derivatives were being traded at on NYMEX were artificial, having been manipulated by ADM's selling actions at Argo. Plaintiff alleges that ADM's manipulation of ethanol prices at Argo, including during the MOC window, caused hundreds of millions of dollars in damages to entities that traded in derivatives tied to Argo Terminal prices.

Thus, even though the specific action of manipulating ethanol prices downward occurred at Argo Terminal, these actions had the result of manipulating the price of commodities derivatives traded on a registered entity, NYMEX. Therefore, unlike in *Gunderson* and *Eby*, where the violations involved completely "off-exchange" instruments, the CEA violation in this case arises, at least partially, out of the execution of orders on the floor of a registered entity.

The final question pertaining to punitive damages under § 25(a)(3), is whether punitive damages are available *only* against "floor brokers" as defined under the CEA. ADM is, clearly, not a "floor broker." See 7 U.S.C. § 1a(22) (definition of a "floor broker"). Thus, if punitive damages under the CEA are available only against floor brokers, Plaintiff's punitive damages request must be dismissed. However, if as Plaintiff argues, punitive damages are available against not just floor brokers themselves but parties who direct the floor brokers to execute actions in violation of the CEA, the punitive damages claim should survive. The parties did not cite to, and the court could not find, *any* cases that address this issue. Therefore, the court must turn to the statutory language of § 25(a)(3) to determine the scope of availability of punitive damages under the CEA.

In interpreting a statute, the court relies on traditional rules of statutory interpretation, and "[a]nalysis of the statutory text, aided by established principles of interpretation, control." *POM Wonderful LLC v. Coca-Cola, Co.*, 573 U.S. 102, 112 (2014). When attempting to decipher the proper interpretation of a statute, the court begins by determining whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 648-49 (7th Cir. 2011). The cardinal rule of statutory interpretation is that courts must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose. *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004). In determining whether the meaning of statutory language is plain or

ambiguous, the court looks to the specific language at issue, the context in which the language is used, and the broader context of the statute as a whole, and will not construe the statute in a way that makes words or phrases meaningless, redundant, or superfluous. *Miscellaneous Firearms*, 376 F.3d at 712.

Reading the statutory text of § 25 as a whole, the court finds Plaintiff may recover punitive damages against ADM. The court begins by examining the "actual damages" provision of § 25(a)(1). That provision allows for a private right of action to recover actual damages against a defendant who engages in commodity price manipulation. *Dennis v. JP Morgan Chase & Co.*, 343 F.Supp.3d 122, 173 (S.D.N.Y. 2018). The provision states that "Any person ... who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph..." 7 U.S.C. § 25(a)(1). There is no dispute that ADM, a corporate entity, qualifies as a "person" who would be subject to actual damages under § 25(a)(1) if it was found to be in violation of the CEA. See *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, 801 F.3d 758, 765 (7th Cir. 2015) (plaintiff could recover actual damages under § 25(a)(1) against Schreiber Foods, a corporate entity, for violations of the CEA).

Turning now to § 25(a)(3), that subsection states:

> In any action arising from a violation in the execution of an order on the floor of a registered entity, the person referred to in paragraph (1) shall be liable for--
>> (A) actual damages proximately caused by such violation. If an award of actual damages is made against a floor broker in

> connection with the execution of a customer order, and the futures commission merchant which selected the floor broker for the execution of the customer order is held to be responsible under section 2(a)(1) of this title for the floor broker's violation, such futures commission merchant may be required to satisfy such award; and
>
> (B) where the violation is willful and intentional, punitive or exemplary damages equal to no more than two times the amount of such actual damages. If an award of punitive or exemplary damages is made against a floor broker in connection with the execution of a customer order, and the futures commission merchant which selected the floor broker for the execution of the customer order is held to be responsible under section 2(a)(1) of this title for the floor broker's violation, such futures commission merchant may be required to satisfy such award if the floor broker fails to do so, except that such requirement shall apply to the futures commission merchant only if it willfully and intentionally selected the floor broker with the intent to assist or facilitate the floor broker's violation.

7 U.S.C. § 25(a)(3).

An examination of the statutory language reveals that § 25(a)(3) is concerned primarily with CEA violations committed in connection with "an order executed on the floor of a registered entity." Section 25(a)(3)(A) states that "the person referred to in paragraph (1) shall be liable for actual damages proximately caused by such a violation." Section 25(a)(3)(A) ends with "and," indicating it is to be read in conjunction with the Section 25(a)(3)(B). Section 25(a)(3)(B) indicates that "where the violation is willful and intentional, punitive or exemplary damages equal to no more than two times the amount of such actual damages." Thus, a plain reading of the statute is that if the person (such as ADM) who is engaged in commodity price manipulation in violation of the CEA and is subject to actual damages under § 25(a)(1), also engaged in

such manipulation via the execution of orders on the floor of a registered entity, then that person is also subject to actual damages under § 25(a)(3)(A). Further, if the alleged violation is willful and intentional, punitive or exemplary damages equal to no more than two times the amount of such actual damages are available against such person under § 25(a)(3)(B).

Now, the question to be answered is whether "the person referred to in paragraph (1)" *must* be a floor broker for § 25(a)(3)(B) to apply. Based on a plain reading of § 25(a)(3)(A) and (B), the answer is no. The "floor broker" is only mentioned in connection with the futures commission merchant's responsibility to satisfy the actual and/or punitive damages award against the broker if the broker fails to do so, if the floor broker is found to have violated the CEA in the execution of a customer's order on the floor of a registered entity. There is nothing in § 25(a)(3)(B) that says the *customer* is also not subject to punitive damages for ordering the floor broker to execute orders that would violate the CEA. The portions of (a)(3)(A) and (a)(3)(B) following the first sentence merely explain how futures commission merchants may satisfy awards against floor brokers for CEA violations committed on the floor of registered entities. They are, as Plaintiff notes, merely provisions for vicarious liability.

Those sentences, however, do nothing to modify or narrow the first sentences of subsections (a)(3)(A) and (B) that the person from subsection (a)(1), *i.e.* the "customer" who gave the order to the floor broker that violated the CEA is liable for actual damages under (a)(3)(A) and, if the violation was willful and intentional, punitive damages

under (a)(3)(B).  If Congress meant to limit damages under § 25(a)(3) to *only* floor brokers, and *not* the customers who gave the illegal orders to the floor brokers to execute, it could have easily done so.  Congress did not do so.  The court agrees with Plaintiff that, if floor brokers were truly the only persons subject to punitive damages, then it would not be necessary to use the qualifying language "[i]f an award of punitive or exemplary damages is made against a floor broker."

Floor brokers are only one type of person potentially liable for punitive damages under this section, not the *only* type.  The court finds that the availability of punitive damages under § 25(a)(3)(B) is not limited to only floor brokers who violate the CEA via the execution of orders on the floor, but are also available against the customers, such as ADM in this case, who gave the floor brokers those orders.

The court's reading of § 25(a)(3) is further borne out by the broader context of the CEA as a whole.  See *Miscellaneous Firearms*, 376 F.3d at 712.  The purpose of the CEA is to serve the public interests "to deter and prevent price manipulation or any other disruptions to market integrity; to ensure the financial integrity of all transactions subject to this chapter and the avoidance of systemic risk; to protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets; and to promote responsible innovation and fair competition among boards of trade, other markets and market participants."  7 U.S.C. § 5(b).  A constrained reading of § 25(a)(3) to allow punitive damages only against the floor broker who executed the illegal trades, but not against the corporate entity customer that allegedly concocted the

16

scheme and directed the broker's actions, would not serve the CEA's stated purpose of ensuring financial integrity of market transactions, protecting market participants from fraudulent/abusive sales practices, and especially to deter and prevent market price manipulations. Indeed, it would serve to insulate from liability the entity responsible for the scheme in many cases.

The court notes that, in the legislative history of the punitive damages amendment, Senator Leahy stated "The bill is tough, but fair. It is a code of conduct that any honest trader can live by. Very simply, under this bill, any floor trader[1] cheating a customer will be severely punished; any exchange not policing its floor will be forced to clean up its act." 138 Cong. Red. S17868-02, 1992 WL 279554. If one of the intentions behind §25(a)(3) was to severely punish and deter floor traders and floor brokers from cheating customers, would not the same reasoning apply to the customer itself if it was the one directing the illegal actions of the floor brokers/traders and cheating other buyers and sellers in the commodities market, as ADM is alleged to have done in this case? The court believes its reading of § 25(a)(3) reflects the plain, unambiguous language of the statute and best effectuates the purpose behind the CEA to deter price manipulations in the commodities markets. ADM's motion is DENIED on this ground.

---

[1]As noted by Plaintiff, under the CEA, "floor traders" and "floor brokers" are different, as brokers trade on behalf of others and traders trade on behalf of themselves, lending credence to the court's interpretation that § 25(a)(3) is not limited to floor brokers. See 7 U.S.C. §§ 1a(22), (23).

IT IS THEREFORE ORDERED:

(1) ADM's Motion to Dismiss (#14) is GRANTED in part and DENIED in part. It is granted as to any claims premised under 7 U.S.C. §§ 6c(a) and 6b(a). Claims under § 6c(a) are dismissed with prejudice, but claims under § 6b(a) are dismissed without prejudice for the reasons stated in this Order.

(2) This case is referred to the magistrate judge for further proceedings in accordance with this Order.


ENTERED this 22nd day of May, 2020.

                              s/ COLIN S. BRUCE
                              U.S. DISTRICT JUDGE